**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PATRICK CIOLINO, | ) |
| on behalf of plaintiff and the | ) |
| class members described below, | ) |
| | ) |
| vs. | ) |
| | ) |
| SETERUS, INC., formerly known as | ) |
| IBM LENDER BUSINESS PROCESS | ) |
| SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT – CLASS ACTION

## INTRODUCTION

1. Plaintiff Patrick Ciolino brings this action against Seterus, Inc., to secure redress for improper conduct relating to private mortgage insurance termination. Plaintiff alleges violation of the Homeowners Protection Act, 12 U.S.C. §4901 et seq., and state law.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§1331, 1337, and 1367.

3. Venue in this district is proper because:

    a.    Defendant's conduct impacted plaintiff in this district;

    b.    Defendant does business in this district;

    c.    Defendant is subject to personal jurisdiction here;

    d.    The action concerns real estate located in this district.

## PARTIES

4. Plaintiff Patrick Ciolino resides in a home which he owns in Romeoville, Illinois.

5. Defendant Seterus, Inc., formerly known as IBM Lender Business Process Services, Inc. ("Seterus"), is a Delaware corporation with its principal place of business in Oregon. It does business in Illinois. Its registered agent and office is CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

1

6.  Seterus services a portfolio of home mortgages in excess of $1 million.

7.  Seterus describes itself on its web site (www.seterus.com ) as "one of the nation's leading specialty loan servicing companies" and "a fully integrated loan servicing company consisting of experienced, skilled professionals using leading technology."

## FACTS

8.  Plaintiff Patrick Ciolino has a first mortgage loan secured by his home that is presently serviced by Seterus.

9.  Plaintiff originally obtained the loan on June 7, 2007, from Marquette Bank.  The original principal balance was $226,800.

10.  In connection with the loan, plaintiff contracted  to pay private mortgage insurance ("PMI").

11.  At the time the loan was made, plaintiff received a PMI  disclosure (Appendix A).

12.  At the time, the value of the property was agreed to be $252,000.  (Appendix A)

13.  The PMI disclosure stated that PMI will automatically terminate on the date that the principal balance is scheduled to reach 78% of the original value of the property, which is August 1, 2011.  Automatic termination was conditioned on plaintiff being current on his loan payments.

14.  The Homeowners Protection Act, 12 U.S.C. §4901(18), defines "termination date" to mean:

> **(A) with respect to a fixed rate mortgage, the date on which the principal balance of the mortgage, based solely on the initial amortization schedule for that mortgage, and irrespective of the outstanding balance for that mortgage on that date, is first scheduled to reach 78 percent of the original value of the property securing the loan; and**

> **(B) with respect to an adjustable rate mortgage, the date on which the principal balance of the mortgage, based solely on the amortization schedule then in effect for that mortgage, and irrespective of the outstanding balance for that mortgage on that date, is first scheduled to reach 78 percent of the original value of the property securing the loan.**

15.  The Homeowners Protection Act, 12 U.S.C. § 4902, provides:

2

**(b) Automatic termination**

**A requirement for private mortgage insurance in connection with a residential mortgage transaction shall terminate with respect to payments for that mortgage insurance made by the mortgagor–**

**(1) on the termination date if, on that date, the mortgagor is current on the payments required by the terms of the residential mortgage transaction; or**

**(2) if the mortgagor is not current on the termination date, on the first day of the first month beginning after the date that the mortgagor becomes current on the payments required by the terms of the residential mortgage transaction. . . .**

**(d) Treatment of loan modifications**

**If a mortgagor and mortgagee (or holder of the mortgage) agree to a modification of the terms or conditions of a loan pursuant to a residential mortgage transaction, the cancellation date, termination date, or final termination shall be recalculated to reflect the modified terms and conditions of such loan. . . .**

**(e) No further payments**

**No payments or premiums may be required from the mortgagor in connection with a private mortgage insurance requirement terminated or canceled under this section–**

**. . . (2) in the case of termination under subsection (b) of this section, more than 30 days after the termination date or the date referred to in subsection (b)(2) of this section, as applicable; . . .**

**(f) Return of unearned premiums**

**(1) In general**

**Not later than 45 days after the termination or cancellation of a private mortgage insurance requirement under this section, all unearned premiums for private mortgage insurance shall be returned to the mortgagor by the servicer. . . .**

16.     In  2011, Seterus, then known as IBM Lender Business Process Services, Inc.,

serviced the loan.

17.     In 2011, plaintiff and Seterus entered into a permanent loan modification

agreement (Appendix B).  The principal balance on the loan went up from $219,064.84 to

$220,091.27 as a result of the modification.  Seterus has admitted that the modification "did not

significantly change" the LTV ratio for plaintiff's loan. (Appendix C) Seterus has also admitted

3

that it did not obtain a new appraisal when it modified plaintiff's loan.

18.     The loan modification provided that the terms and conditions of the original loan remained in effect except as specified.

19.     Seterus neither recalculated PMI based on the modification, nor honored the original loan terms relating to PMI termination.  In addition, on information and belief, Seterus has never recalculated or provided plaintiff with a new amortization schedule.  Instead, Seterus continues to charge PMI premiums and claims plaintiff either has to wait until the "estimated midpoint" of his loan, or pay a $350 appraisal fee in order to prove Seterus was obligated to do one or the other.

20.     Specifically, Seterus did not terminate the PMI on the automatic termination date.

21.     On information and belief, based on industry practice, Seterus has a financial incentive to continue the PMI on plaintiff's loan because it receives a portion of the premium.

22.     Plaintiff has been current on the loan from the modification to present.  Plaintiff's statements show that the balance on his loan as of September, 2015 was $180,683.18 (Appendix D), well below what the balance would have been pursuant to the original amortization schedule on the original automatic termination date ($201,600).

23.     Plaintiff has been required to continue paying PMI to Seterus to avoid default on his loan.

24.     Instead of terminating PMI, by letter of August 28, 2015, Seterus invited plaintiff to apply for termination.  (Appendix E)

25.     In addition, Seterus did not notify plaintiff of any new automatic termination date and/or his rights to automatic termination of PMI.

26.     The Homeowners Protection Act,  12 U.S.C.A. § 4903, provides:

**(A) . . .**

> **(3) Annual disclosures**
>
> **If private mortgage insurance is required in connection with a residential mortgage transaction, the servicer shall disclose to the mortgagor in each**

4

such transaction in an annual written statement--

> **(A) the rights of the mortgagor under this chapter to cancellation or termination of the private mortgage insurance requirement; and**

> **(B) an address and telephone number that the mortgagor may use to contact the servicer to determine whether the mortgagor may cancel the private mortgage insurance. . . .**

27. The Homeowners Protection Act, 12 U.S.C. §4904, further provides:

**§ 4904. Notification upon cancellation or termination**

**(a) In general**

**Not later than 30 days after the date of cancellation or termination of a private mortgage insurance requirement in accordance with this chapter, the servicer shall notify the mortgagor in writing--**

> **(1) that the private mortgage insurance has terminated and that the mortgagor no longer has private mortgage insurance; and**

> **(2) that no further premiums, payments, or other fees shall be due or payable by the mortgagor in connection with the private mortgage insurance.**

**(b) Notice of grounds**

> **(1) In general**

> **If a servicer determines that a mortgage did not meet the requirements for termination or cancellation of private mortgage insurance under subsection (a) or (b) of section 4902 of this title, the servicer shall provide written notice to the mortgagor of the grounds relied on to make the determination (including the results of any appraisal used to make the determination).**

> **(2) Timing**

> **Notice required by paragraph (1) shall be provided–**

> > **. . . (B) with respect to termination of private mortgage insurance under section 4902(b) of this title, not later than 30 days after the scheduled termination date.**

28. Seterus did not provide plaintiff with any notice within 30 days after May 1, 2012.

29. 12 U.S.C. § 4910 (b), "No preclusion of cancellation or termination agreements,"

provides that "**Nothing in this chapter shall be construed to preclude cancellation or termination, by agreement between a mortgagor and the holder of the mortgage, of a requirement for private mortgage insurance in connection with a residential mortgage transaction before the cancellation or termination date established by this chapter for the mortgage.**"

30.     On information and belief, Seterus' conduct towards plaintiff represents its standard practice with respect to termination of PMI on loans that have been modified.

31.     Plaintiff has been damaged by Seterus' conduct, in that he has been forced to continue making PMI payments.  In addition, plaintiff has been attempting to refinance his loan under the HARP program.  Under the rules of the HARP program, if plaintiff's loan currently has PMI, he will be required to have PMI on this refinanced loan.  However, if his PMI had been terminated, as it should have been, he would not have been required to have PMI.  This will cause plaintiff substantial damage, as he is now going to have to pay PMI premiums for several more years.

## COUNT I – HOMEOWNERS PROTECTION ACT

32.     Plaintiff incorporates paragraphs 1-31.

33.     Seterus is liable under 12 U.S.C. § 4907, which provides:

**§ 4907. Civil liability**

**(a) In general**

**Any servicer, mortgagee, or mortgage insurer that violates a provision of this chapter shall be liable to each mortgagor to whom the violation relates for--**

> **(1) in the case of an action by an individual, or a class action in which the liable party is not subject to section 4909 of this title, any actual damages sustained by the mortgagor as a result of the violation, including interest (at a rate determined by the court) on the amount of actual damages, accruing from the date on which the violation commences;**

> **(2) in the case of--**

> > **(A) an action by an individual, such statutory damages as the court may allow, not to exceed $2,000; and**

6

**(B) in the case of a class action--**

**(i) in which the liable party is subject to section 4909 of this title, such amount as the court may allow, except that the total recovery under this subparagraph in any class action or series of class actions arising out of the same violation by the same liable party shall not exceed the lesser of $500,000 or 1 percent of the net worth of the liable party, as determined by the court; . . .**

**(3) costs of the action; and**

**(4) reasonable attorney fees, as determined by the court.**

**(b) Timing of actions**

**No action may be brought by a mortgagor under subsection (a) of this section later than 2 years after the date of the discovery of the violation that is the subject of the action.**

**(c) Limitations on liability**

**(1) In general**

**With respect to a residential mortgage transaction, the failure of a servicer to comply with the requirements of this chapter due to the failure of a mortgage insurer or a mortgagee to comply with the requirements of this chapter, shall not be construed to be a violation of this chapter by the servicer.**

**(2) Rule of construction**

**Nothing in paragraph (1) shall be construed to impose any additional requirement or liability on a mortgage insurer, a mortgagee, or a holder of a residential mortgage.**

34.     Seterus is subject to 12 U.S.C. § 4909, in that it is subject to regulation by the

Consumer Financial Protection Bureau.

## CLASS ALLEGATIONS

35.     This claim is brought on behalf of 3 classes, pursuant to Fed. R. Civ. P. 23(a) and

(b)(3).

36.     Class A consists of (a) all persons paying PMI (b) whose loans were serviced by

Seterus (c) when the principal balance was first scheduled to reach 78 percent of the original

value of the property securing the loan; (d) whose PMI was not terminated on that date, if they

were current, or if they were not current, on the first day of the first month beginning after the

7

date that they became current; (e) where PMI was paid on or after a date 2 years before the filing of this action.

37.     Class B consists of (a) all persons paying PMI (b) whose loans were serviced by Seterus (c) when the principal balance was first scheduled to reach 78 percent of the original value of the property securing the loan; (d) who were not sent a notice within 30 days of that date, (e) where PMI was paid on or after a date 2 years prior to the filing of this action.

38.     Class C consists of (a) all persons paying PMI (b) whose loans were serviced by Seterus and (c) were not provided with an annual notice of rights relating to the termination and cancellation of PMI (d) on or after a date 2 years prior to the filing of this action.

39.     On information and belief, based on the size of Seterus, each  class is so numerous that joinder of all members is impracticable. There are more than 40 members of each class.

40.     There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members.  The predominant common questions are:

> a.     What Seterus' policies and practices are with respect to PMI termination, generally and with respect to loans that have been modified;
>
> b.     What Seterus' policies and practices are with respect to notice of PMI rights;
>
> c.     Whether Seterus' policies and practices comply with the Homeowners Protection Act.
>
> d.     Whether Seterus' policies and practices constitute a breach of contract.

41.     Plaintiff's claims are typical of the claims of the class members.  All are based on the same legal and factual issues.

42.     Plaintiff will fairly and adequately represent the members of the class.  Plaintiff has retained counsel experienced in the prosecution of consumer credit claims and class actions.

8

43. A class action is superior for the fair and efficient prosecution of this litigation. Classwide liability is essential to cause defendant to stop its improper conduct. Many class members may be unaware that they have been victims of illegal conduct.

WHEREFORE, plaintiff requests that the Court enter judgment in plaintiff's favor and in favor of the class and against defendant for:

(1) Appropriate statutory and compensatory damages;

(2) Attorney's fees, litigation expenses and costs of suit;

(3) Such other or further relief as is appropriate.

## COUNT II – BREACH OF CONTRACT

44. Plaintiff incorporates paragraphs 1-31.

45. The PMI disclosure provided to plaintiff at the inception of the loan became part of the contract.

46. Defendant failed to comply with the contract by terminating PMI.

## CLASS ALLEGATIONS

47. This claim is brought on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

48. The class consists of (a) all persons paying PMI (b) whose loans were serviced by Seterus (c) when the principal balance was first scheduled to reach 78 percent of the original value of the property securing the loan; (d) whose PMI was not terminated on that date, if they were current, or if they were not current, on the first day of the first month beginning after the date that they became current; (e) where PMI was paid on or after a date 10 years before the filing of this action.

49. On information and belief, based on the size of Seterus, the class is so numerous that joinder of all members is impracticable. There are more than 40 members of each class.

50. There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members. The predominant

9

common questions are:

    a.    What Seterus' policies and practices are with respect to PMI termination, generally and with respect to loans that have been modified;

    b.    What Seterus' policies and practices are with respect to notice of PMI rights;

    c.    Whether Seterus' policies and practices comply with the Homeowners Protection Act.

    d.    Whether Seterus' policies and practices constitute a breach of contract.

51. Plaintiff's claims are typical of the claims of the class members. All are based on the same legal and factual issues.

52. Plaintiff will fairly and adequately represent the members of the class. Plaintiff has retained counsel experienced in the prosecution of consumer credit claims and class actions.

53. A class action is superior for the fair and efficient prosecution of this litigation. Classwide liability is essential to cause defendant to stop its improper conduct. Many class members may be unaware that they have been victims of illegal conduct.

WHEREFORE, plaintiff requests that the Court enter judgment in plaintiff's favor and in favor of the class and against defendant for:

    (1)    Compensatory damages;

    (2)    Costs of suit;

    (3)    Such other or further relief as is appropriate.

## COUNT III – ILLINOIS CONSUMER FRAUD ACT

54. Plaintiff incorporates paragraphs 1-31.

55. Defendant engaged in unfair acts and practices, in violation of 815 ILCS 505/2, by:

    a.    Failing to comply with the Homeowner's Protection Act;

    b.    Failing to properly recalculate a new automatic PMI termination date on

plaintiff's loan;

    c.      Failing terminate the PMI on plaintiff's loan when the loan reached 78% of its original value;

56.     Defendant engaged in such acts and practices in the course of trade and commerce in financial services.

57.     Defendant engaged in such conduct with reckless indifference to plaintiff's rights and as part of a pattern of such conduct. Seterus has been the subject of numerous individual and class cases alleging improper mortgage servicing and charges.

58.      Plaintiff suffered damages as a result of defendant's conduct, in that he has been required to pay PMI premiums past the point at which his PMI should have been automatically terminated.

### CLASS ALLEGATIONS

59.     This claim is brought on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

60.     The class consists of (a) all persons residing in Illinois and paying PMI (b) whose loans were serviced by Seterus (c) when the principal balance was first scheduled to reach 78 percent of the original value of the property securing the loan; (d) whose PMI was not terminated on that date, if they were current, or if they were not current, on the first day of the first month beginning after the date that they became current; (e) where PMI was paid on or after a date 3 years before the filing of this action.

61.     On information and belief, based on the size of Seterus, the class is so numerous that joinder of all members is impracticable. There are more than 40 members of each class.

62.     There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members. The predominant common questions are:

    a.      What Seterus' policies and practices are with respect to PMI termination,

generally and with respect to loans that have been modified;

b.      What Seterus' policies and practices are with respect to notice of PMI rights;

c.      Whether Seterus' policies and practices comply with the Homeowners Protection Act.

d.      Whether Seterus' policies and practices constitute unfair and deceptive conduct in violation of the Illinois Consumer Fraud Act.

63.    Plaintiff's claims are typical of the claims of the class members. All are based on the same legal and factual issues.

64.    Plaintiff will fairly and adequately represent the members of the class. Plaintiff has retained counsel experienced in the prosecution of consumer credit claims and class actions.

65.    A class action is superior for the fair and efficient prosecution of this litigation. Classwide liability is essential to cause defendant to stop its improper conduct. Many class members may be unaware that they have been victims of illegal conduct.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of the plaintiff and the class and against defendant for:

i.      Actual damages;

ii.     Punitive damages;

iii.    Attorney's fees, litigation expenses and costs of suit;

iv.    Such other or further relief as the Court deems proper.


s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC

20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any  recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


s/ Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

14

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

s/ Daniel A. Edelman
Daniel A. Edelman

T:\31772\Pleading\Complaint_Pleading.WPD