# **APPENDIX A**

# FEDERAL PRIVATE MORTGAGE INSURANCE DISCLOSURE

| Principal<br>$226,800.00 | Loan Date<br>06-07-2007 | Maturity<br>07-01-2027 | Loan No | Call / Coll | Account | Officer<br>3106 | Initials |
|---|---|---|---|---|---|---|---|

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

Borrower:

Lender: **Marquette Bank**
Orland Branch - 143rd
9612 W. 143rd Street
Orland Park, IL 60462

## FEDERAL PRIVATE MORTGAGE INSURANCE DISCLOSURE
## FOR RESIDENTIAL MORTGAGE LOANS
### IMPORTANT

### PLEASE DO NOT SIGN THIS FORM UNTIL YOU CAREFULLY READ AND UNDERSTAND ITS CONTENT

Private mortgage insurance (commonly referred to as "PMI", "Mortgage Insurance," or "Mortgage Guaranty Insurance") is required as a condition of your mortgage loan. The purpose of PMI is to protect the lender and/or any future note holder against a possible loss in the event that you default under the terms of the loan. PMI also often allows lenders to grant to borrowers mortgage loans that require lower down payment amounts or loans with higher loan-to-value ("LTV") ratios.

The LTV ratio is calculated by dividing the principal balance of your loan by the lesser of the sales price or the appraised value of the residential property securing the loan. The cost of PMI premiums will increase the amount of your payments.

**This disclosure explains your PMI cancellation rights and responsibilities under the Homeowners Protection Act of 1998 as amended. You may have additional rights under state law.**

In a number of places below, we refer to the "original value" of the dwelling that secures your loan. The "original value" means the lesser of the actual sale price of the dwelling (if this is a purchase money transaction) or its appraised value at the time of the mortgage loan origination. The "original value" for purposes of your loan is $252,000.00.

**Your Right to Cancel PMI (Borrower-Initiated Cancellation).** Subject to certain conditions, you may request that the PMI coverage and premiums associated with your loan be canceled.

**TIMING OF REQUEST.** You may request your loan servicer to cancel PMI on the cancellation date. The cancellation date, at your option, is either of the following dates:

(A) **Initial Amortization Schedule.** The cancellation date for your loan, based on your initial amortization schedule, is the date on which your loan is scheduled to reach 80% of the original value of the residential property securing the loan. That date is August 1, 2011.

(B) **Actual Payments.** The cancellation date for your loan based on your actual payments is the date when the principal balance of your mortgage actually reaches 80% of the original value of the residential property securing the loan. This date may occur before the cancellation date based on the initial amortization schedule if, for example, you are permitted to make prepayments of principal under your loan documents and you do so.

**CRITERIA FOR CANCELLATION.** Your request to cancel PMI will be granted if you meet certain conditions. The minimum criteria you must meet to cancel PMI include the following:

(A) You must notify your loan servicer in writing that you want to cancel the PMI. Your current loan servicer is: Marquette Bank - 143rd, 9612 W. 143rd Street, Orland Park, IL 60462.

(B) You must have a good payment history. A good payment history on your mortgage loan means that:

(1) No mortgage payment was 30 days or more past due during the 12-month period before the later of (a) the date on which the mortgage loan reaches the cancellation date, or (b) the date on which you submit a request for cancellation; and

(2) No mortgage payment was 60 days or more past due during the 24-month period before the later of (a) the date on which the mortgage loan reaches the cancellation date, or (b) the date on which you submit a request for cancellation.

(C) You must be current on the payments required by the terms of your mortgage loan.

(D) At the time of your request, you may be required to provide evidence satisfactory to the loan servicer that:

(1) the value of the residential property securing the mortgage has not declined below the original value of the property; and

(2) your equity in the property securing the mortgage is not encumbered by a junior or subordinate lien.

Your loan servicer will notify you in writing of the evidence it will require after it receives your request to cancel PMI.

**YOUR RIGHT TO AUTOMATIC TERMINATION OF PMI.** The "automatic termination date" for your loan, based solely on your initial amortization schedule, is the date on which your loan is scheduled to reach 78% of the original value of the residential property securing the loan. That date is May 1, 2012. The requirement for PMI will automatically terminate on the automatic termination date if your mortgage payments are current on that date. If you are not current on your mortgage loan payments on the termination date, the requirement for PMI will automatically terminate on the first day of the first month after which you become current on your payments.

**YOUR RIGHT TO FINAL TERMINATION OF PMI.** In the event conditions described above are not met and PMI is not cancelled, the lender may not impose the PMI requirement beyond the first day of the month immediately following the date that is the midpoint of the amortization period of the loan.

**NOTICE OF GROUNDS PREVENTING CANCELLATION/TERMINATION OF PMI.** If your loan servicer determines that your mortgage does not meet the requirements for borrower-initiated cancellation or automatic termination, you will receive written notice of the grounds relied on in making the determination, including, as an example, the results of any appraisal used in making the determination.

**NOTIFICATION UPON CANCELLATION OR TERMINATION.** Within 30 days after the date the PMI is canceled or terminated, your lender or loan servicer will notify you that PMI has been terminated and that you have no PMI in connection with your loan. In addition, you will no longer be obligated to pay further premiums, payments, or other fees in connection with PMI.

**REFUND OF UNEARNED PMI PREMIUMS.** The lender or loan servicer must refund all unearned PMI premiums, if any, to you within 45 days after PMI has been canceled or terminated.

# FEDERAL PRIVATE MORTGAGE INSURANCE DISCLOSURE
## (Continued)

Page 2

**EXEMPT TRANSACTIONS.** Certain mortgage loans that have been classified as "high risk" loans by Fannie Mae, Freddie Mac, or the lender have different rules that control when or how PMI must be cancelled. Your mortgage loan is not a high risk loan.

**BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE READ, RECEIVED, AND UNDERSTAND THIS FEDERAL PRIVATE MORTGAGE INSURANCE DISCLOSURE. THIS DISCLOSURE IS DATED JUNE 7, 2007.**

BORROWER:

X_____
Patrick T Ciolino

# **APPENDIX B**

COPY

Investor Loan # ▓▓▓▓▓▓

**After Recording Return To:**

_____

_____

_____

_____

This document was prepared by IBM Lender Business Process Services, Inc. (LBPS)

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

L710A

Borrower ("I"):[1] Patrick T Ciolino

Lender or Servicer ("Servicer"): IBM Lender Business Process Services, Inc.

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): June 7, 2007

Loan Number: ▓▓▓▓▓▓

Property Address (Property"): ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Servicer, the Servicer will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3157    3/09    (rev. 6/09) *(page 1 of 7 pages)*

1.   **My Representations.** I certify, represent to Servicer and agree:

   A.   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan
        Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to
        make the monthly mortgage payments now or in the near future;
   B.   I live in the Property as my principal residence, and the Property has not been condemned;
   C.   There has been no change in the ownership of the Property since I signed the Loan
        Documents;
   D.   I have provided documentation for all income that I receive (and I understand that I am not
        required to disclose child support or alimony unless I chose to rely on such income when
        requesting to qualify for the Home Affordable Modification program ("Program"));
   E.   Under penalty of perjury, all documents and information I have provided to Servicer in
        connection with this Agreement, including the documents and information regarding my
        eligibility for the Program, are true and correct;
   F.   If Servicer requires me to obtain credit counseling in connection with the Program, I will do
        so; and
   G.   I have made or will make all payments required under a Trial Period Plan or Loan Workout
        Plan.

2.   **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A.   If prior to the Modification Effective Date as set forth in Section 3 the Servicer determines that
        any of my representations in Section 1 are no longer true and correct, the Loan Documents
        will not be modified and this Agreement will terminate. In that event, the Servicer will have all
        of the rights and remedies provided by the Loan Documents; and

   B.   I understand that the Loan Documents will not be modified unless and until (i) I receive from
        the Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification
        Effective Date (as defined in Section 3) has occurred. I further understand and agree that the
        Servicer will not be obligated or bound to make any modification of the Loan Documents if I
        fail to meet any one of the requirements under this Agreement.

3.   **The Modification.** If my representations in Section 1 continue to be true in all material respects
     and all preconditions to the modification set forth in Section 2 have been met, the Loan
     Documents will automatically become modified on March 1, 2011 (the "Modification Effective
     Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have
     failed to make any payments as a precondition to this modification under a workout plan or trial
     period plan, this modification will not take effect. The first modified payment will be due on March
     1, 2011.

   A.   The new Maturity Date will be: September 1, 2034.

   B.   The modified principal balance of my Note will include all amounts and arrearages that will be
        past due as of the Modification Effective Date (including unpaid and deferred interest, fees,
        escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid
        Amounts") less any amounts paid to the Servicer but not previously credited to my Loan. The
        new principal balance of my Note will be $220,091.97 (the "New Principal Balance"). I
        understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance,
        the added Unpaid Amounts accrue interest based on the interest rate in effect under this
        Agreement. I also understand that this means interest will now accrue on the unpaid Interest
        that is added to the outstanding principal balance, which would not happen without this
        Agreement.

   C.   Interest at the rate of 2% will begin to accrue on the New Principal Balance as of February 1,

2011 and the first new monthly payment on the New Principal Balance will be due on March 1, 2011.  My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 5 | 2% | 2/1/2011 | $976.12 | $567.74, may adjust periodically | $1,543.86, may adjust periodically | 3/1/2011 | 60 |
| 6 | 3% | 2/1/2016 | $1,063.78 | $567.74, may adjust periodically | $1,631.52, may adjust periodically | 3/1/2016 | 12 |
| 7 | 4% | 2/1/2017 | $1,151.40 | $567.74, may adjust periodically | $1,719.14, may adjust periodically | 3/1/2017 | 12 |
| 8 - 24 | 4.75% | 2/1/2018 | $1,216.33 | $567.74, may adjust periodically | $1,784.07, may adjust periodically | 3/1/2018 | 199 |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan.  My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.  **Additional Agreements.**  I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Servicer has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Servicer.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all

other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

I will pay to Servicer on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.D. I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items. Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount. Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.D.

Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Servicer can require under RESPA. Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds. Servicer and I can agree in writing, however, that interest shall be paid on the Funds. Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as

defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Servicer shall promptly refund to me any Funds held by Servicer.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Servicer shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Servicer exercises this option, Servicer shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Servicer will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note must be waived with respect to any borrower "pay for performance".

J. That, I will cooperate fully with Servicer in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Servicer's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Servicer does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O.

Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Servicer and Servicer's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Servicer including, but not limited to, releasing and canceling the mortgage loan.

M. That Servicer will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Servicer to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Servicer's request to execute, acknowledge, initial and deliver to the Servicer any documentation the Servicer deems necessary. If the original promissory note is replaced, the Servicer hereby indemnifies me against any loss associated with a demand on the original note. All documents the Servicer requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Servicer's written request for such replacement.

In Witness Whereof, the Servicer and I have executed this Agreement.
IBM Lender Business Process Services, Inc.

_____          (Seal)

Servicer

_____          (Seal)

Date          Charlene Busselaar
              Loan Administration AVP

_____

_____ [Space Below This Line For Notary Acknowledgement]_____

State of OREGON
County of WASHINGTON

The fo
before
By
Notary
My Co

OFFICIAL SEAL
ALMETA LEE JEFFERSON
NOTARY PUBLIC - OREGON
COMMISSION NO. 452387
MY COMMISSION EXPIRES SEPTEMBER 19, 2014



# ACKNOWLEDGEMENT

State of _ILLINOIS_

County of _WILL_

On _2/19/11_ before me, _Dale Ann Kwasny_ personally appeared _Patrick T. Ciolino_ _____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

NOTARY PUBLIC
OFFICIAL SEAL
STATE OF ILLINOIS
DALE ANN KWASNY
MY COMMISSION EXPIRES
JANUARY 16, 2012

Signature _____ _____ (Seal)

RE: Patrick T Ciolino

greement

F028A

# APPENDIX C

# seterus™

PO Box 1077, Hartford, CT 06143-1077

FedEx 2Day Delivery

*L400K*

Patrick T. Ciolino

**Business Hours (Pacific Time)**
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

**Physical Address**
14523 SW Millikan Way, Suite 200, Beaverton, OR 97005

**Payments**
PO Box 54420, Los Angeles, CA 90054-0420

**Correspondence, Inquiries, and Notices**
PO Box 1077, Hartford, CT 06143-1077

Phone: 866.570.5277
Fax: 866.578.5277
www.seterus.com

September 10, 2015
Loan number: █████████
Serviced by Seterus, Inc.

Dear Mr. Ciolino:

On behalf of Seterus, Inc., I am responding to your correspondence to the Consumer Financial Protection Bureau regarding the above-referenced loan.

The servicing of your loan transferred to Seterus from Chase Home Finance, LLC on July 1, 2010. We believe we are in compliance with all applicable laws and regulations regarding the servicing of your loan.

Our records indicate that your loan originated with a Private Mortgage Insurance (PMI) policy. The PMI premium is paid monthly from your escrow account. The original PMI policy premium was based off the Loan-to-Value (LTV) ratio of your loan balance in relation to the original value of the collateral property at the time your loan originated. The term "original value" means the lesser of the contract sales price or the appraisal value at the time the loan closed.

According to the enclosed Federal Private Mortgage Insurance Disclosure signed by you when your loan originated, the PMI policy for your loan was scheduled to automatically terminate on May 1, 2012 based on the original amortization schedule of the loan. The automatic termination of the PMI policy is based solely on the original amortization schedule of the loan under federal guidelines set forth in the Homeowners Protection Act of 1998.

However, your loan was modified under the terms of the enclosed Home Affordable Modification Agreement (Agreement) on February 25, 2011. It is important to note that a new appraisal is not required in order to modify the terms of a loan.

The implementation of the Agreement increased the unpaid principal balance on your loan from $219,064.84 to $220,091.97. As the LTV ratio for your loan was not significantly changed as a result of the modification, the PMI monthly premium did not change. Please note that we receive monthly billing statements from the PMI Company detailing the premium due for the current month, and payments are issued based on the amount detailed on the monthly billing statements received. If there is a change in the PMI premium, the loan will be updated at the time the premium is issued.

(Continued)

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. COLORADO: SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. NEW YORK CITY: 1411669, 1411665, 1411662. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

Page 1 of 2

Patrick T. Ciolino
September 10, 2015
Loan number: ████████

Under the Homeowners Protection Act of 1998, if a borrower and mortgage holder agree to modify the terms and conditions of a loan, the cancellation, termination or final termination dates shall be recalculated to reflect the modification. This is detailed on page 4 section D of the Homeowners Protection Act documentation you provided with your correspondence (copy enclosed). Therefore, the amortization schedule and the automatic termination date of the PMI policy from the origination of your loan are no longer valid.

At this time, the midpoint of the loan amortization or the automatic termination date for your PMI policy is estimated to be March 1, 2023. Pursuant to the terms of your signed Agreement, the loan is now a step rate loan and the automatic termination date of the PMI policy is impacted by the step rate adjustments; therefore, we are unable to provide you with an exact date the PMI policy will automatically be removed from the loan.

Under the Homeowners Protection Act of 1998, any request for cancellation of the PMI policy prior to this date requires a new appraisal. A new appraisal must be conducted under federal guidelines to ensure there has not been a decline in the value of the collateral property since the date your loan originated.

The appraisal fee is $350.00 and must be paid by you prior to our ordering of the appraisal. If ordered, this appraisal fee is non-refundable regardless of the outcome of your cancellation request. Appraisals or other property evaluations submitted by you will not be accepted.

The enclosed correspondence was sent to you on June 5, 2015 detailing the steps you will need to follow in order to have the loan reviewed for possible cancellation of the PMI policy. The basic requirements contained in this correspondence may not be applicable to your loan due to the modification of your loan. As stated in this correspondence, if you have agreed to a modification or refinance of your loan, the terms for PMI cancellation and automatic termination are based on the new modified terms of your loan. We review each individual loan for cancellation of the PMI policy based on the status of the loan at the time of our review.

With regard to your concerns that your executed Agreement is not recorded in Will County, please be advised that we are not required to record your executed Agreement as it does not meet the necessary guidelines for recording.

If you have any questions regarding this correspondence, you may contact me directly at 503.270.4078.

Sincerely,

K. Alexander
Consumer and Government Affairs
Seterus, Inc.

Enclosures

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. COLORADO: SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. NEW YORK CITY: 1411669, 1411665, 1411662. TENNESSEE. This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

# **APPENDIX D**

Representation Of Printed Document

# seterus™

## Account Statement

PO Box 2008; Grand Rapids, MI 49501-2008

| Statement Date | September 04, 2015 |
| --- | --- |
| Account Number | |

5-769-15684-0000053-001-000-000-000-000

☎ Phone    866.570.5277

✉ Email    ExternalCommunications@seterus.com
Response typically sent by U.S. Mail

PATRICK T CIOLINO

| Payment Due Date | October 1, 2015 |
| --- | --- |
| Amount Due[3] | $ 1,670.58 |

If payment is received after October 16, 2015, a $48.81 late fee will be assessed.

| Outstanding Principal* | $ | 180,683.18 |
| --- | --- | --- |
| Current Escrow Balance | $ | 54.94 |
| Maturity Date | | September 01, 2034 |
| Interest Rate until February 01, 2016 | | 2.00000% |
| Prepayment Penalty[1] | | No |

Property₁

*This is not a payoff amount and does not include interest, fees, and other costs.

| Past Payment Breakdown | | | |
| --- | --- | --- | --- |
| | Paid Since Last Statement | | Paid Year-to-date |
| Principal | $  673.86 | $ | 6,024.52 |
| Interest | $  302.26 | $ | 2,760.56 |
| Escrow | $  694.46 | $ | 6,257.14 |
| Charges | $  5.00 | $ | 40.00 |
| Suspense (unapplied) | $  0.00 | | |
| **Total** | $  1,675.58 | $ | 15,082.22 |

| Explanation of Amount Due | | |
| --- | --- | --- |
| Principal[2] | $ | 674.98 |
| Interest[2] | $ | 301.14 |
| Escrow (Taxes and Insurance) | $ | 694.46 |
| **Regular Payment** | $ | 1,670.58 |
| Past Due Payment(s) | $ | 0.00 |
| Total Charges | $ | 5.00 |
| Suspense (credit)[4] | $ | 5.00 |
| **Total Amount Due[3]** | $ | 1,670.58 |

[1]Seterus does not currently charge a prepayment penalty.
[2]The principal and interest payment stated on this notice is based on the information we have at the time this notice was generated. While the allocation of principal and interest may change, your total principal and interest payment will remain the same.
[3]This is not a payoff or reinstatement amount; it is the total amount due as of the date of the statement. If you need a formal payoff amount, please contact us.
[4]Partial payments are held in a suspense account. See enclosed Partial Payment Information insert for more information.

769-2048-0114F

| Activity Since Last Statement | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Date | Description | Principal | Interest | Escrow | Late Charge/ Other Fees | Other | Suspense | Total |
| August 13, 2015 | Loan Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | -$5.00 | -$5.00 |
| August 13, 2015 | Web Pay Fee Paid | $0.00 | $0.00 | $0.00 | $5.00 | $0.00 | $0.00 | $5.00 |
| August 18, 2015 | PMI Disbursement | $0.00 | $0.00 | -$122.85 | $0.00 | $0.00 | $0.00 | -$122.85 |
| September 4, 2015 | Loan Payment | $673.86 | $302.26 | $694.46 | $0.00 | $0.00 | $0.00 | $1670.58 |
| September 4, 2015 | Web Pay Fee | $0.00 | $0.00 | $0.00 | $5.00 | $0.00 | -$5.00 | -$5.00 |

ADDITIONAL TRANSACTIONS AND ACTIVITY CONTINUE ON PAGE 3

## Important Messages

- - - - - - - - - - Detach this portion and return with your check made payable to Seterus, Inc. Please write your loan number on your check. - - - - - - - - - -

# seterus™

## Payment Coupon

PATRICK T CIOLINO

Loan #: _____

☐ Check this box if you provided information on the reverse side

| Amount Due | | |
| --- | --- | --- |
| Payment Due Date | | October 1, 2015 |
| TOTAL AMOUNT DUE | $ | 1,670.58 |
| Payment After October 16, 2015 | $ | 1,719.39 |
| | | (Includes Late Charge) |

Seterus, Inc
PO Box 54420
Los Angeles, CA 90054-0420

| TOTAL ENCLOSED | $ | |
| --- | --- | --- |

INTERNET REPRINT

**Representation of Printed Document**

Automated loan information is available 24 hours a day by calling our customer service number or visiting us online. Customer Service Representatives are available Monday – Thursday, 5 a.m. to 8 p.m. and Friday 5 a.m. to 6 p.m. (Pacific Time). Include your loan number on all correspondence and payments.

☎ Phone: 866.570.5277      ☎ Fax: 866.578.5277      💻 Online: www.seterus.com

| | |
|---|---|
| Bankruptcy Notices | Seterus, Inc. • Attn: Bankruptcy Department • PO Box 2206 • Grand Rapids, MI  49501-2206 |
| Correspondence | Seterus, Inc. • PO Box 2008 • Grand Rapids, MI  49501-2008 |
| Insurance Information | QBE FIRST Insurance Agency, Inc. • PO Box 961299 • Fort Worth, TX 76161-0299 • 866.745.9798 |
| Overnight Payments | Seterus, Inc. (Box 54420) • 1200 West 7th Street • Suite L2-200 • Los Angeles, CA  90017 |
| Tax Information | QBE FIRST Property Tax Solutions, LLC • PO Box 14906 • Durham, NC  27709-4906 • 866.384.6919 |

**PROMPT CREDITING OF PAYMENTS:** Write your loan number on your check or money order, and mail it with the payment coupon at the bottom of this statement. Avoid late charges by sending the correct payment amount on or before the due date using a check or money order. Payments received by mail in any other form may delay processing. The date on a check, money order or postmark is not considered the date received. We do not accept cash or post-dated checks. For your convenience, you can make your payment anytime at www.seterus.com.

**CREDIT BUREAU INFORMATION:** If you believe your payment history has been reported to a consumer reporting agency inaccurately, write to our Customer Service Department at PO Box 2008, Grand Rapids, MI 49501-2008 or contact the consumer reporting agency directly.

**PAYOFF INFORMATION:** Request a payoff quote by calling our automated phone system at 866.570.5277 and following the prompts. Payoff quotes may also be obtained by faxing a request to 866.578.5277. Include your signature and authorization to release information to a third party, if applicable.

**PAYMENT DIFFICULTY.** If you are having difficulty making your payments, you may qualify for a temporary or permanent solution to help get your mortgage back on track. If you want to stay in your home, there are several options available such as a Loan Modification, Repayment Plan, or Forbearance Agreement. If you have decided that homeownership is no longer for you, we may be able to assist you with a Short Sale or Mortgage Release™. You can find answers to frequently asked questions and submit the required documentation on our website at www.seterus.com.

**REAL ESTATE TAXES:** If your real estate taxes are included in your escrow account, forward copies of all delinquent, adjusted, corrected, or interim bills to QBE FIRST Property Tax Solutions. If you qualify for a state tax exemption, we cannot file it on your behalf. Your scheduled payment cannot be adjusted until we receive written verification of the exemption and the next adjusted bill comes from the taxing authority.

**INSURANCE:** If your insurance premium is included in your escrow account, forward copies of all policies and bills to QBE FIRST Insurance Agency. If you obtain a new hazard or flood policy, you must have your agent send us a copy at least 30 days before your existing policy expires. The mortgagee loss payee clause on all policies must read "Seterus, Inc., its Successors, and/or Assigns." Unless you provide us with a copy of any new policies, we may obtain insurance on your behalf and bill you accordingly. This coverage may be different and more expensive than coverage available in the standard insurance market and does not cover personal property.

**ONLINE RESOURCES.** Activate your online account today at www.seterus.com, and access up-to-date loan information anytime. Make a payment, find answers to frequently asked questions, or upload documents. We'll also post important messages to your secure inbox. You can even access our website from your mobile phone or tablet.

**INTEREST ONLY LOANS:** Amounts paid to principal may decrease the interest amount due in subsequent installments.

**SPECIAL REQUEST FEES:** Seterus generally charges the following fees for additional, special services. The actual fee charged may be different if there are limitations imposed by applicable law. Fees are subject to change without notice. Fees for other special services will be quoted upon request.

| | |
|---|---|
| ARM Conversion | up to $350.00 |
| CEMA/NY Refinance | $350.00 |
| Full Assumption | up to $900.00 |
| Partial Release of Property | $250.00 |
| Returned Check Charge | $25.00 |
| Simple Assumption | $25.00 |
| Speedpay® Web Payment | $5.00 |
| Speedpay Phone Payment | $10.00 |
| Subordination | $250.00 |

**AUTOPAY.** Sign up for AutoPay and never worry about missed payments or late fees again. Complete the form below to authorize us to automatically debit your future mortgage payments from the account you used to make this payment. We will send you the AutoPay terms and conditions that you must sign and return to activate your automatic payments. Or simply go to www.seterus.com/autopay to enroll online.

**PAPERLESS DOCUMENT DELIVERY.** Receive up to 12 months of mortgage statements electronically when you sign up for paperless document delivery. It's a simple, convenient, and secure way to manage your mortgage documents. Enroll today at www.seterus.com/gopaperless.

**HUD COUNSELORS:** For information on HUD Counselors in your area, visit www.hud.gov or call 800.569.4287.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. COLORADO: SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. NEW YORK CITY: 1411669, 1411665, 1411662. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR. NEW YORK: State law requires we disclose to you that Seterus, Inc. is licensed in the State of New York. Complaints regarding Seterus, Inc. can be directed to the New York State Banking Department. You may obtain further information from the New York State Banking Department by calling the Department's Consumer Help Unit at 877.BANK.NYS(877.226.5697) or by visiting the Department's website at www.banking.state.ny.us. If you have questions, please contact Customer Service toll-free at 866.570.5277 or in writing at PO Box 2008; Grand Rapids, MI 49501-2008.

L718AD.1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**CHANGE OF INFORMATION:** Complete the form below, mark the box on the front of this payment coupon, and return it with your payment.

Mailing Address: _____

               Street Address           City          State       Zip

Phone Number Home (    )        Work 1 (    )       Work 2 (    )

Borrower Signature: _____    Co-Borrower Signature: _____

If you would like to use a different bank account, fill out the information below.    Checking ☐    Savings ☐

Bi-weekly loans will be drafted on the due dates. For other loans, the debit date must be between the due date and the end of your grace period. For example, payments due on the 1st with a 15-day grace period must select a day between 1 and 15.

**AUTOMATIC PAYMENTS.** AutoPay terms and conditions will be mailed to you that you must sign and return to activate your automatic payment.

    Use account information from this payment ☐    Day of each month to debit your payment* _____

Financial Institution _____    Bank Account Number _____

ABA Routing Number _____    Optional: Payment amount in addition to regular payment _____

REPRESENTATION OF PRINTED DOCUMENTS

# seterus™

PO Box 2008; Grand Rapids, MI 49501-2008

## Account Statement – Page 3

| Statement Date | September 04, 2015 |
| Account Number | |

| 🖥 Online | www.seterus.com |
| ☎ Phone | 866.570.5277 |
| 📠 Fax | 866.578.5277 |

| 🖥 Email | ExternalCommunications@ seterus.com |
| | *Response typically sent by U.S. Mail* |

5-769-15684-0000053-001-000-000-000-000

**Borrower Information**
**Property Address**

| Date | Description |
| --- | --- |
| September 4, 2015 | Loan Payment |

| Interest | Escrow | Late Charge/ Other Fees | Other | Suspense | Total |
| --- | --- | --- | --- | --- | --- |
| $0.00 | $0.00 | $0.00 | $0.00 | $5.00 | $5.00 |

INTERNET REPRINT

# seterus.

## EXPLANATION FOR HOLDING PAYMENTS IN A SUSPENSE ACCOUNT

We cannot apply a partial payment (money received that totals less than the full amount due) toward a scheduled payment, under the terms of your mortgage.

When we receive a partial payment, we hold the funds in a special account, and they are said to be "in suspense." When we receive the rest of the money necessary to make a full scheduled payment, we usually apply the full payment to your mortgage at that time.

There are circumstances under which we will hold funds in suspense even if there is enough money to make a full scheduled payment. These include:

- Your loan is current, and we understand that it is your intention to use the money to make a scheduled payment, but the next payment is not yet due. We will apply the funds when the payment comes due. NOTE: If you would like to be able to prepay on your mortgage loan, contact us to set up a prepayment plan to ensure that we apply your payments as you intend.
- You previously provided contribution funds to temporarily hold the foreclosure process. These contribution funds will remain in suspense while the loan is in foreclosure.
- You sent funds intending to pay off your mortgage loan, but did not send the full payoff amount needed to do so. When we receive the balance of the payoff amount from you by the "good-through date," as specified on your payoff quote, we will apply the funds to pay your loan in full. If the good-through date passes, you must contact us to request a new payoff quote, and send us the new remaining balance before we can apply your payment to your mortgage loan.
- We are processing a refund to you or to your prior servicer that we will issue from the suspense account. Once the refund check is processed, then funds will be removed from suspense.
- We received payment related to a short sale agreement, but have not yet received the necessary documentation to conclude the process. When we receive the short sale documents by their due date, we will conduct a final review and, when all terms are met, we will apply the funds to the mortgage loan. If we do not receive the documents by the due date, we may return the payment.
- We are awaiting a signed settlement agreement or a bankruptcy court approval on a settlement. When we receive the agreement and/or approval by their due dates, we will apply the funds in suspense to your loan per the settlement agreement. If we do not receive the documents by their due dates, and if there are enough funds in suspense to make a full scheduled payment under the terms of your existing mortgage, we will apply them to the next payment when due. If the funds would result in a partial payment, we will hold them in suspense until you send us the balance required to make the payment.
- We are awaiting a signed Hardest Hit Fund agreement. When we receive the agreement by the due date, we will apply the funds in suspense to your loan per the agreement. If we do not receive the documents by the due date, we may return the Hardest Hit Fund assistance to the state.

769-4162-0314F

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. COLORADO: SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. NEW YORK CITY: 1411669, 1411665, 1411662. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

# **APPENDIX E**

# seterus™

PO Box 2008, Grand Rapids, MI 49501-2008

**Business Hours (Pacific Time)**
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

**Physical Address**
14523 SW Millikan Way, Suite 200, Beaverton, OR 97005

**Payments**
PO Box 54420, Los Angeles, CA 90054-0420

**Correspondence**
PO Box 2008, Grand Rapids, MI 49501-2008

**Phone:** 866.570.5277
**Fax:** 866.578.5277
www.seterus.com

*L171AA.1*

Patrick T Ciolino

August 28, 2015
Loan number: █████
Serviced by Seterus, Inc.

Dear Mr. Ciolino:

We have received your request to cancel private mortgage insurance (PMI) on your residential mortgage loan. In order to initiate the process of PMI cancellation, the following conditions must be met:

- The loan-to-value (LTV) ratio must be 80% or less and meet specific guidelines for cancellation based on the property type, origination date, and value of the property. In order to complete your request, we must order an appraisal of the property.
- The appraisal cost is $350.00 and must be paid by you prior to our ordering the appraisal. If ordered, this appraisal cost is non-refundable regardless of the outcome of your cancellation request. Appraisals or other property evaluations submitted by you will not be accepted.
- All payments for principal, interest, escrow charges, and late fees must be current.
- Payment history: You must be current on your loan payments, have no outstanding fees, and have a demonstrated "good" payment history. This means no payment has been 30 days or more delinquent in the past 12 months and no payment more than 60 days delinquent in the past 24 months preceding the date of the request to cancel PMI.
- You must complete and return the enclosed form including a check for the appraisal fee in the envelope provided.

Be aware that, if you have agreed to a modification or refinance of your loan, the terms for PMI cancellation and automatic termination are based on the newly modified terms of your loan.

Once the enclosed form and appraisal fee are received, we will complete our review and order your appraisal if the other conditions noted in this document are met. If the enclosed form is not completed and returned with the required appraisal fee, we will consider your request closed.

The owner of your loan is Federal National Mortgage Association (Fannie Mae), 3900 Wisconsin Avenue NW, Washington, DC 20016-2892, 800.732.6643. Fannie Mae has contracted with us to service and respond to inquiries about your loan. Inquiries may be directed to Seterus at PO Box 2008; Grand Rapids, MI 49501-2008.

Sincerely,

Seterus, Inc.

Enclosure

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. COLORADO: SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. NEW YORK CITY: 1411669, 1411665, 1411662. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

Patrick T Ciolino
August 28, 2015
Loan number: ████████

### Request for Cancellation of Private Mortgage Insurance

I request cancellation of the private mortgage insurance on loan number █████████.

1.   Select one of the following:

_____   The above property is a single-family dwelling (including a condo or townhome), and I currently occupy the property as either my primary residence or my second home.

_____   The above property is a single-family dwelling (including a condo or townhome), and I currently DO NOT occupy the property as either my primary residence or my second home.

_____   The above property is a multi-family dwelling (an income property such as a duplex), and I currently occupy the property as either my primary residence or my second home.

_____   The above property is a multi-family dwelling (an income property such as a duplex), and I currently DO NOT occupy the property as either my primary residence or my second home.

2.   Fill out the below information in full. Failure to provide this information could result in a delay of your review.

I understand that the enclosed $350.00 is for the purposes of an appraisal to determine my eligibility to cancel private mortgage insurance and is not refundable.

_____          _____
Patrick T Ciolino                                                                  Date

_____          _____

3.   The appraiser can reach me at the following phone number(s):

_____daytime                    _____evening

4.   Mail this completed form with a check made out to Seterus, Inc. for the appraisal cost of $350.00 to:
Seterus, Inc.
Attn: PMI Cancellation-MC1234
PO Box 2008
Grand Rapids, MI  49501

Please write your loan number on your check.

We have provided a pre-printed envelope for your convenience. This address is for PMI cancellation forms and fees only. Any loan payments or correspondence will not be processed at this address.