IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK CIOLINO,<br>on behalf of himself and a class<br>of similarly situated individuals,<br><br>    Plaintiff,<br><br>    v.<br><br>SETERUS, INC., formerly known as<br>IBM LENDER BUSINESS PROCESS<br>SERVICES, INC.,<br><br>    Defendant. | Case No. 15 C 9247 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Patrick Ciolino claims that his mortgage servicer, Seterus, Inc., was required to terminate his private mortgage insurance by a specific date but did not do so. He has sued Seterus for violation of the Homeowners Protection Act (HPA or the Act), 12 U.S.C. §§ 4902-4904 (count one of the complaint), breach of contract (count two), and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505 (count three). Seterus asserts that the HPA preempts Ciolino's breach of contract and ICFA claims and has moved to dismiss counts two and three of the complaint. In the alternative, Seterus contends that Ciolino has otherwise failed to state a breach of contract or ICFA claim. For the reasons stated below, the Court concludes that the HPA preempts Ciolino's state law claims and grants Seterus's motion to dismiss on that basis.

**Background**

On June 7, 2007, Marquette Bank extended to Ciolino a mortgage loan, secured by his home, with a principal balance of $226,800. In connection with the loan, Ciolino was required to purchase, and did purchase, private mortgage insurance (PMI). With his PMI purchase, Ciolino received the required PMI disclosure form, which outlined his PMI cancellation rights and responsibilities under the HPA. That disclosure form notified Ciolino that his PMI policy would automatically terminate on the date his principal balance was scheduled to reach 78 percent of the original value of the property. The original value of Ciolino's property was $252,000, and his principal balance was scheduled to reach 78 percent of that amount on August 1, 2011.[1]

In 2011, Seterus began servicing Ciolino's loan, and in February of that year, Ciolino and Seterus entered into a permanent loan modification agreement. Ciolino alleges that Seterus modified the terms of the original loan without obtaining a new appraisal and that the modification increased the principal balance from $219,064.84 to $220,091.27. According to Ciolino, the modification did not significantly change the loan-to-value ratio for his loan or provide a new amortization schedule. He asserts, however, that if Seterus had properly calculated the automatic PMI termination date based on the loan modification, he would have been entitled to a new automatic termination date, which would have been on some date in late 2013.[2]

---

[1] At one point in the complaint, Ciolino identifies August 1, 2011 as the original automatic termination date, but at another point, he suggests that the correct automatic termination date was May 1, 2012. *See* Am. Compl. ¶¶ 13, 31. Whether the correct date was August 1, 2011 or May 1, 2012 is irrelevant to the preemption issue presently before the Court.

Under the HPA, a mortgagor's requirement to make PMI payments in connection with a residential mortgage transaction "shall terminate . . . on the termination date" if the mortgagor is current on his payments. 12 U.S.C. § 4902(b). The "termination date" is the date on which the principal balance of the mortgage is first scheduled to reach 78 percent of the original value of the property securing the loan. *Id.* § 4901(18). If a mortgagor and mortgagee (or holder of the mortgage) agree to a loan modification, "the cancellation date, termination date, or final termination shall be recalculated to reflect the modified terms and conditions of such loan." *Id.* § 4902(d). Following termination of PMI, the mortgagor may not be required to make any more premium payments, and the servicer must return any unearned PMI premium no later than 45 days after termination. *Id.* § 4902(e)-(f). Once the PMI has been terminated, the servicer must notify the mortgagor in writing, within 30 days of termination, that the PMI has terminated and that he no longer has PMI and owes no further premium, payments, or other fees in connection with the PMI. *Id.* § 4904(a). If, however, the servicer determines that a mortgage did not meet the requirements for PMI termination, it must provide written notice, within 30 days of the scheduled termination date, of the grounds relied on to make that determination. *Id.* § 4904(b).

Ciolino alleges that Seterus failed to terminate his PMI policy on either the original termination date of August 1, 2011 (or May 1, 2012) or on any newly calculated date (such as sometime in late 2013). In addition, he avers that Seterus never notified

---

2   Ciolino does not explain why the loan modification would require the calculation of a new automatic PMI termination date. A review of a letter from Seterus—a letter that Ciolino attached to his complaint—suggests that following the modification, the loan became a "step rate" loan and that the step rate adjustments altered the automatic termination date. *See* Letter of Sept. 10, 2015 from Seterus to Ciolino, Ex. C to Am. Compl.

3

him of a newly calculated PMI termination date or of his rights to automatic PMI termination pursuant to a newly calculated date. According to Ciolino, Seterus's failure to terminate the PMI or to provide him with the appropriate notifications violated the HPA. Ciolino also contends that the PMI disclosure form that he was provided became part of a contract between him and Seterus, a contract that he claims Seterus violated by failing to terminate PMI at the proper time. Ciolino also asserts that, by failing to comply with the HPA, Seterus engaged in unfair acts and practices in violation of the ICFA.

> The HPA contains an express preemption clause, which provides:
>
> With respect to any residential mortgage or residential mortgage transaction consummated after the effective date of this chapter . . . the provision of this chapter shall supersede any provisions of the law of any State relating to requirements for obtaining or maintaining private mortgage insurance in connection with residential mortgage transactions, cancellation or automatic termination of such private mortgage insurance, any disclosure of information addressed by this chapter, and any other matter specifically addressed by this chapter.

12 U.S.C. § 4908(a)(1). "Protected State laws"—laws concerning PMI requirements enacted before or within two years after July 29, 1998 (the date the HPA was adopted) by a state that had PMI requirements in effect before January 2, 1998—are not preempted by the HPA unless they are inconsistent with the Act. *Id.* § 4908(a)(2)(A), (C). A protected state law that requires earlier PMI termination or the disclosure of more information, earlier disclosure, or more frequent disclosures is not considered inconsistent with the HPA. *See id.* § 4908(a)(2)(B).

Seterus argues that Ciolino's breach of contract and ICFA claims are expressly preempted because they are based on state laws "relating to requirements for obtaining or maintaining [PMI] in connection with residential mortgage transactions." *Id.* §

4

4908(a)(1). Ciolino responds that his claims are based on state laws of general application that do not provide any specific guidance concerning PMI and that, in any event, courts do not find preemption in cases like this where the state laws at issue impose no additional obligations but merely provide plaintiffs with additional remedies to address conduct prohibited by federal law. As discussed below, the Court agrees with Seterus that Ciolino's state law claims are based on laws "relating to" the HPA's requirements and are therefore preempted.

### Discussion

Seterus has moved to dismiss Ciolino's state law claims under Federal Rule of Civil Procedure 12(b)(6). In determining whether these claims are preempted, therefore, the Court accepts the allegations in Ciolino's complaint as true and draws reasonable inferences in his favor. *See Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 838 (7th Cir. 2015).

**1. HPA preemption**

Although no other court in this circuit has considered the preemptive effect of the HPA, this Court is not the first federal court to do so. A number of other district courts to consider the question have concluded that the HPA preempts the types of state law claims at issue. *See Fried v. JP Morgan Chase & Co.*, No. CV 15-2512 (MCA), 2016 WL 347314, at *5 (D.N.J. Jan. 28, 2016) (preemption of breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, negligent misrepresentation, and state statutory consumer protection claims); *Gregor v. Aurora Bank FSB*, 26 F. Supp. 3d 146, 153–54 (D.R.I. 2014) (preemption of fraudulent concealment and unjust enrichment claims); *Augustson v. Bank of Am., N.A.*, 864 F.

Supp. 2d 422, 437 (E.D.N.C. 2012) (preemption of fraud and negligent misrepresentation claims). Other district courts, however, have reached the opposite conclusion. *See Song v. Nationstar Mortg. Holdings Inc.*, No. CV 16-006, 2016 WL 3914148, at *4 (E.D. Pa. July 20, 2016) (no preemption of breach of contract or unjust enrichment claims); *Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 568–69 (D. Md. 2012) (no preemption of fraud, negligent misrepresentation, or state statutory consumer protection claims); *Scott v. GMAC Mortg. LLC*, No. 3:10CV00024, 2010 WL 3340518, at *5 (W.D. Va. Aug. 25, 2010) (no preemption of fraud claim). The first court to address preemption under the HPA concluded that the Act preempted only the plaintiff's claim under the state's consumer protection act, not the plaintiff's breach of contract claim. *See Fellows v. CitiMortgage, Inc.*, 710 F. Supp. 2d 385, 402–04 (S.D.N.Y. 2010). One other district court has addressed HPA preemption, but the circumstances in which the issue arose in that case limit its applicability here. *See Rice v. Green Tree Servicing, LLC*, No. 3:14-CV-93, 2015 WL 1478595, at *6 (N.D.W. Va. Mar. 31, 2015) (determining whether "complete preemption doctrine" applied based on nature of *pro se* plaintiff's complaint). Ciolino suggests that one additional court declined to find HPA preemption of state law claims against a mortgage company. *See Wickman v. Aurora Loan Services, LLC*, No. 12CV1702 JAH DHB, 2013 WL 4517247, at *3 (S.D. Cal. Aug. 23, 2013). But *Wickman* actually involved a different mortgage law statute, with a rather different preemption clause, and the claims asserted in that case were unrelated to PMI requirements. *Id.*

Though courts have reached differing conclusions regarding the HPA's preemption of the state law claims at issue, the decisions are not necessarily at odds

6

with each other regarding the scope of the HPA's preemptive effect. In *Fellows*, for example, the court recognized that the provision of the HPA preempting all state laws "relating to" certain mortgage requirements echoes the preemption provisions in other federal statutes, including the provisions in the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1144(a), and the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1). *See Fellows*, 710 F. Supp. 2d at 399. Thus prior interpretations of those statutes' preemption provisions provide useful guidance for interpreting the HPA's similar provision. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008) ("[W]hen judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretations as well."). Most other courts considering the HPA's preemption provision have looked to interpretations of ERISA for guidance. *See Fried*, 2016 WL 347314, at *6; *Gregor*, 26 F. Supp. 3d at 153–54; *Augustson*, 864 F. Supp. 2d at 437; *Scott*, 2010 WL 3340518, at *5. The courts in *Dwoskin* and *Song* did not consider ERISA preemption cases in their HPA preemption analyses, but neither did they deny the appropriateness of doing so. Rather, as discussed in greater depth below, those courts found that the HPA did not preempt the state law claims at issue based on particular facts specific to those cases. *See Song*, 2016 WL 3914148, at *2, *4 (breach of contract claim based on servicer's obligations that went beyond those imposed by the HPA not preempted); *Dwoskin*, 850 F. Supp. 2d at 568 (no preemption of fraud, negligent misrepresentation, or consumer protection claims that were based on alleged false statements and proof of which would not focus on the detailed disclosure provisions of the HPA).

In the ERISA context, the Supreme Court has determined that a state law "relates to" an employee benefit plan, and is therefore preempted under ERISA, "if it has a *connection with or reference to* such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97–98 (1983) (emphasis added). The Supreme Court has similarly interpreted the Airline Deregulation Act's "relating to" phrase to mean "having a *connection with, or reference to*, [in the Act's context] airline rates, routes, or services." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (emphasis added). Viewed in light of courts' interpretations of the preemption provisions in ERISA and the Airline Deregulation Act, the court in *Fellows* concluded that "it is clear that the preemptive reach of the HPA is expansive." *Fellows*, 710 F. Supp. 2d at 401.

As the Supreme Court has recognized, however, determining whether a law has a "connection with" an ERISA plan, for example, is not much easier than discerning whether a law "relates to" such a plan. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995). Thus courts must "go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* The purpose of ERISA's preemption clause, the Supreme Court has noted, was

> to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government.

*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990). Thus the Supreme Court has found state laws preempted by ERISA where they "mandate[] employee benefit structures or their administration" or "provid[e] alternative enforcement mechanisms" to

8

those established by ERISA itself.  *Travelers*, 514 U.S. at 658.  In addition to the use of the same "relating to" phrase, the otherwise broad language found in the text of the HPA's preemption clause suggests that, as in the ERISA context, Congress sought uniformity of residential mortgage law.  *See* 12 U.S.C. § 4908(a)(1) (preempting "*any* provisions of the law of *any* State *relating to* requirements for obtaining or maintaining [PMI] *in connection with* residential mortgage transactions . . . and *any other matter* specifically addressed by this chapter") (emphasis added).  The purpose of uniformity, and thus the reduction of compliance costs, is further confirmed by the Senate Report accompanying the bill that became the HPA.  *See* S. Rep. No. 105–129, at 9  ("The bill . . . provides broad preemptive language that will minimize compliance costs with respect to state laws."); *Scott*, 2010 WL 3340518, at *5 (relying on the Senate Report in stating that "Congress's purpose in passing the HPA was to create a uniform set of regulations to govern the disclosure of mortgage insurance.").  Thus, although the Court begins with the presumption that Congress did not intend to supplant state law, *see Maryland v. Louisiana*, 451 U.S. 725, 746 (1981), the Court agrees with the other district courts that have concluded that the HPA's use of the phrase "relating to" indicates the expansiveness of its preemptive reach and Congress' goal of national uniformity.  *See, e.g.*, *Fellows*, 710 F. Supp. 2d at 401.  Where the enforcement of state laws would undermine Congress's purpose in enacting the HPA, such state laws are properly understood as "relating to" the HPA's requirements and are therefore preempted by the Act unless otherwise exempted from preemption.  *See id.*

The HPA's provision exempting "protected State laws" from preemption is not at odds with the Court's conclusion that Congress intended to establish a nationally

uniform body of residential mortgage law. There is nothing inconsistent in Congress's creation of a law that fosters uniformity following its passage, while still including a preemption exemption for states that retained or modified their existing PMI-related laws within a short period after the Congressional enactment. ERISA's preemption provision, for example, is considered to be "clearly expansive," *Travelers*, 514 U.S. at 655, and an attempt by Congress to implement its "goal of uniformity," *Ingersoll-Rand*, 498 U.S. at 142. But, as Seterus notes, ERISA also excludes certain state laws from its own express preemption provision. Def.'s Reply Br. at 8; *see* 29 U.S.C. § 1144(b)(2), (4), (5), (6), (8). As in the case of ERISA, the HPA's "goal of uniformity" remains apparent despite exempting a limited set of state laws from the broad reach of its preemption clause.

### 2. Ciolino's state law claims

Ciolino does not contend that his state law claims are saved from preemption because they are based on "protected State laws," as defined by the HPA. Instead, he argues that the HPA does not preempt his breach of contract or ICFA claims because those claims do not "relate to the HPA requirements relating to private mortgage insurance." Pl.'s Mem. in Opp. to Def.'s Mot to Dismiss at 6. This assertion, however, is contradicted by the allegations in the complaint. Ciolino's breach of contract claim, for example, is based on the express allegation that the disclosure form provided to him incorporated the "rights provided by the [HPA]" into his contract with Seterus. Compl. ¶ 47. Ciolino alleges that it was Seterus's violation of those rights—that is, the rights established by the HPA—that constituted a breach of their agreement. *Id.* ¶ 48. Similarly, Ciolino alleges that Seterus violated the ICFA by "[f]ailing to comply with the

10

[HPA]" and by failing to follow the procedures relating to PMI that the HPA requires.  *Id.* ¶ 57.  Thus it is a necessary condition of Ciolino's state law claims that Seterus violated the HPA.  Ciolino cannot plausibly contend that these claims do not "relate to" the HPA's requirements.

Ciolino cites no case in which state law claims based on the same conduct underlying an HPA claim survived HPA preemption.  In fact, in cases where courts have found no preemption under the HPA, the courts have emphasized the distinctness of the state law claims from any HPA claims asserted.  The court in *Dwoskin*, for example, noted that the plaintiffs' state law claims in that case were based not on violation of the HPA's specific requirements, but on affirmative misrepresentations the defendant had allegedly made concerning the "no fee" nature of the plaintiffs' mortgage.  *Dwoskin*, 850 F. Supp. 2d at 568.  Thus the proof for the plaintiffs' fraud and negligent misrepresentation claims would not "focus on the detailed disclosure provisions of the HPA," and their consumer protection claim was not an attempt "to impose requirements on the content of PMI-related disclosures or the procedures for PMI cancellation."  *Id.* at 568–69.  Similarly, the state law claims that were not preempted in *Scott* were based on alleged affirmative misrepresentations and thus did "not directly relate to [the HPA's] disclosure requirements."  *Scott*, 2010 WL 3340518, at *5.  Indeed, the court in *Scott* noted that the evidence necessary to prove the fraud claims and the HPA claims was "entirely distinct."  *Id.*

The state law claims at issue in this case are more like those that other courts have found preempted by the HPA.  In *Fried*, for example, the court noted that each state law claim in that case was premised on the defendant's alleged miscalculation of

11

the automatic termination of PMI and that the conduct alleged in each state law claim was the "same conduct underlying the HPA claim." *Fried*, 2016 WL 347314, at *6 (emphasis removed). Allowing the state law claims to go forward, the court concluded, would allow those claims to "function as an alternate enforcement mechanism, echoing the enforcement provisions of the HPA, and frustrating Congress' objective of a uniform regulatory scheme." *Id.* (citing *Gregor*, 26 F. Supp. 3d at 154). Similarly, the court in *Fellows* noted that the HPA expressly grants a private cause of action to mortgagors whose HPA rights are violated by servicers, mortgagees, and mortgage insurers and that allowing consumer protection claims based on the violation of such rights would "interfere with these civil enforcement mechanisms, thereby undermining Congress' purpose in enacting the HPA." *Fellows*, 710 F. Supp. 2d at 402. For the reasons discussed above, the Court believes the claims at issue in *Dwoskin* and *Scott* are distinguishable from those Ciolino asserts in this case, and the Court finds the reasoning in *Fried* and *Fellows* persuasive. The HPA's inclusion of the same "relating to" language found in ERISA and the Airline Deregulation Act indicate the expansive scope of the HPA's preemption clause, as well as Congress' intent to establish a nationally uniform body of law. It is undisputed that Ciolino's ICFA claim is based on the same conduct as his HPA claim, and thus such claims—if allowed to proceed—would provide Illinois plaintiffs an alternative mechanism to enforce their HPA rights, thereby frustrating Congress' goal of uniformity. The Court concludes that the HPA preempts at least Ciolino's ICFA claim.

As for Ciolino's breach of contract claim, the Court agrees with the court in *Fellows* that such a claim is usually not subject to preemption because contractual

12

claims are generally based on self-imposed, rather than state-imposed, obligations. *See Fellows*, 710 F. Supp. 2d at 403. Thus, although the state enforces parties' contractual obligations, Congress' intention to "stop States from imposing their own substantive standards" does not necessarily imply any intent to restrict private parties from bargaining with each other and agreeing to take on different substantive obligations themselves. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232–33 (1995). Breach of contract claims are not immune from preemption, however. As the court in *Fellows* recognized, ERISA's preemptive reach extends to breach of contract claims. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57 (1987) (ERISA's civil enforcement remedy intended to displace alternative state remedies such as breach of contract claim). The court in *Fellows* noted that, like ERISA, the HPA provides for a private cause of action to enforce HPA violations "and might therefore be interpreted to displace certain common law contract claims." *Fellows*, 710 F. Supp. 2d at 404. But the court concluded that the breach of contract claim in that case was not preempted because it was not based on allegations that the defendant violated the HPA's PMI cancellation and disclosure requirements and thus would not give rise to a private cause of action under the HPA. *Id.* Rather, the contract claim in that case was based on the defendant's alleged violation of requirements imposed by Fannie Mae's Servicing Guide, which had allegedly been incorporated into the parties' agreement. *Id.*

The court in *Fellows*, as well as the court in *Song*, also based the determination that the breach of contract claim survived preemption on a provision of the HPA's saving clause. *See* 12 U.S.C. § 4910(b); *Song*, 2016 WL 3914148, at *4; *Fellows*, 710 F. Supp. 2d at 404. That clause provides that the HPA does not preclude a mortgagor and

13

the holder of the mortgage from agreeing to the termination or cancellation of a PMI requirement *before* the date established by the HPA. 12 U.S.C. § 4910(b). Because the plaintiffs' claims in *Fellows* and *Song* were allegedly based on such agreements, those courts concluded that section 4910(b) saved the breach of contract claims from preemption. *Song*, 2016 WL 3914148, at *4; *Fellows*, 710 F. Supp. 2d at 404. Ciolino has not alleged any such agreement in this case, and thus his breach of contract claim is distinguishable from those in *Fellows* and *Song* for that reason as well.

This case, in fact, presents the precise scenario that the court in *Fellows* noted was not at issue in that case. Ciolino's breach of contract claim in this case is based entirely on the HPA's PMI termination and disclosure requirements. It is worth noting that the HPA's private enforcement clause provides a specific remedial scheme for violations of the Act, including a two-year statute of limitations and damages caps for individual cases and for class actions. *See* 12 U.S.C. § 4907. Thus to the extent Congress' purpose in enacting the HPA was "to remove from the states' purview the regulation of requirements concerning PMI cancellation and disclosure," *Fellows*, 710 F. Supp. 2d at 402, allowing a plaintiff to enforce alleged violations of the HPA through an alternative remedial mechanism, such as a breach of contract claim, would be "fundamentally at odds with the goal of uniformity that Congress sought to implement." *Ingersoll-Rand*, 498 U.S. at 142. The Court concludes that Ciolino's breach of contract claim, like his ICFA claim, is preempted by the HPA. *See Fried*, 2016 WL 347314, at *6 (breach of contract claim based on alleged miscalculation of automatic termination of PMI preempted because allowing it to go forward would frustrate Congress' objective of a uniform regulatory scheme).

Ciolino also relies on cases from outside the HPA (or ERISA or Airline Deregulation Act) context to support the proposition that state law claims that do not impose additional obligations, but only add additional remedies for conduct prohibited under federal law, are not preempted. *See Bates v. Dow Agrosciences*, 544 U.S. 431 (2005) (federal statute providing insecticide labeling requirements did not preempt claims for defective design, defective manufacture, negligent testing, breach of express warranty, and violation of consumer protection law); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996) (federal statute providing for safety and effectiveness of medical devices did not preempt state tort claims); *California Fed. Sav. & Loan Ass'n. v. Guerra*, 479 U.S. 272, 292 (1987) (Title VII not inconsistent with, and thus did not preempt, state law requiring certain benefits for pregnant workers); *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 257 (1984) (state award of punitive damages would not frustrate any purpose of federal remedial scheme regarding violation of federal nuclear safety standards and thus award not preempted); *In re Ocwen*, 491 F.3d 638, 643 (7th Cir. 2007) ("Against [the] background of limited remedial authority . . . [the agency's] assertion of plenary regulatory authority does not deprive persons harmed by the wrongful acts of savings and loan associations of their basis state common-law-type remedies."); *Dietrich v. Key Bank, N.A.*, 72 F.3d 1509, 1513 (11th Cir. 1996) (finding that limited preemption clause of Ship Mortgage Act evinced no congressional intent to preempt state law allowing for self-help repossession and resale remedies); *Fragassi v. Neiburger*, 269 Ill. App. 3d 633, 638, 646 N.E.2d 315, 318 (1995) (state law claim for retaliatory discharge based on complaints about occupational safety procedures not preempted by OSHA); *Peoples Trust & Sav. Bank v. Humphrey*, 451 N.E.2d 1104, 1110 (Ind. Ct. App. 1983)

(federal Truth in Lending Act, which provided civil penalties for violations of the act, did not provide exclusive remedies to debtors); *First Sav. & Loan Ass'n of Bureau Cty. v. Kern*, 55 Ill. App. 3d 838, 843, 370 N.E.2d 1326, 1330 (1977) (plaintiff estopped from collecting higher interest rate than rate provided by disclosure statement required by federal law and submitted to defendant by plaintiff).

A review of the cases Ciolino cites reveals their inapplicability here. All of the cases involve statutory schemes and preemption provisions that are completely distinct from the one at issue in the HPA context, and Ciolino makes little attempt to explain why the statutory schemes at issue in those cases are analogous or otherwise relevant in an HPA preemption case. As Seterus also notes, all of the general preemption cases Ciolino cites involved the assertion of independent state law claims—that is, state law claims whose success did not depend upon a finding that the federal law at issue was violated. *See* Def.'s Reply at 3–4. That fact alone makes the cases distinguishable from this one, as Ciolino concedes that his "state law claims are entirely dependent on his HPA claim." *See* Pl.'s Mem. in Opp. to Def.'s Mot to Dismiss at 8.

**Conclusion**

For the reasons stated above, the Court grants Seterus's motion to dismiss [dkt. no. 40] counts two and three of Ciolino's complaint.

                                                                                          _____
                                                                                          MATTHEW F. KENNELLY
                                                                                          United States District Judge

Date: August 16, 2016