IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK CIOLINO, | ) | |
| on behalf of plaintiff and a class, | ) | |
| Plaintiff, | ) | Case No.: 1:15-cv-9247 |
| vs. | ) | |
| | ) | Honorable Judge Kennelly |
| SETERUS, INC., formerly known as | ) | |
| IBM LENDER BUSINESS PROCESS | ) | Magistrate Judge Cole |
| SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff, Patrick Ciolino ("Plaintiff"), individually, and as representative of the class of persons defined below ("Class") requests that this Court enter an order which: (i) preliminarily approves the Class Settlement Agreement ("Agreement") attached as Appendix A[1]; (ii) sets dates for Class members to opt out or object, (iii) schedules a hearing for final approval of the Agreement; (iv) approves the mailing of notice to the Class in the form of Exhibit A to Appendix A, and (v) finds that the mailing of such notice satisfies due process. A copy of the proposed preliminary approval order is attached as Appendix B.

1. Plaintiff, individually and on behalf of a class, filed a lawsuit in the United States District Court for the Northern District of Illinois, against Defendant, Seterus, Inc., formerly known as IBM Lender Business Process Services, Inc. ("Seterus" or "Defendant"). The lawsuit is entitled *Patrick Ciolino v. Seterus, Inc., formerly known as IBM Lender Business Process Services, Inc.,* Case No. 15-cv-9247, and it alleged that Seterus failed to automatically terminate his private mortgage insurance ("PMI") at the correct time, in violation of the Homeowners

---

[1] The attached Settlement Agreement has been approved by the parties, but is not fully executed. The parties anticipate a fully executed version will be available by December 20, 2017.

Protection Act ("HPA"), 12 U.S.C. §4901 et seq. Specifically, Plaintiff alleged that Seterus used a new, undisclosed, "modified" property value when it calculated a new automatic termination date for PMI coverage, failed to automatically terminate PMI at the required time, and failed to provide adequate disclosures, in violation of 12 U.S.C. §§4902, 4903 and §4904. Plaintiff also brought state law claims for breach of contract and violation of the Illinois Consumer Fraud Act, which this Court dismissed after finding them to be preempted by the HPA.

2. This case was vigorously litigated in the almost two years it was pending before the parties reached the proposed settlement. There was a contested motion to dismiss, and Plaintiff filed multiple amended complaints and class motions. The parties conducted extensive discovery, including depositions of Seterus employees, and Seterus produced thousands of pages of documents. Seterus also produced samples of Class member loan files, and spreadsheets providing information regarding the Class members' PMI premiums and termination dates. In October, 2016, Seterus changed its method of calculating PMI automatic termination dates after loan modifications to begin using the original loan value. In March, 2017, the Third Circuit issued a ruling in *Fried v. JP Morgan Chase & Co.*, 850 F.3d 590 (3d Cir. 2017), in which it held that the original value should be used to calculate PMI automatic termination dates after a loan modification if the modified value was not part of the disclosed terms that were modified.

3. The parties requested a settlement conference not long after the Third Circuit ruling, and after arms-length discussion, conducted with the assistance of Magistrate Judge Cole, during two settlement conferences, the parties reached a settlement to resolve the Litigation.

4. Seterus denies violating the HPA and denies all liability to Plaintiff and the Class. Defendant desires to settle the claims brought solely to avoid the expense, burden, and uncertainty of further litigation, and to put to rest all claims that have been or could have been

asserted by Plaintiff and the Class against Defendant in the Litigation. Counsel for the parties have analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the Litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals.

     5.    Based upon counsel's review and analysis, the parties have entered into the Agreement to settle and compromise the Litigation on the terms and conditions embodied in the Agreement and agree as follows:

    A.    <u>Class</u>. The parties agree to seek certification of the following Class for settlement purposes only: All borrowers in Illinois, Indiana, and Wisconsin, who, between October 1, 2013 and October 1, 2016: (1) had Modified Loans serviced by Seterus; (2) qualified for automatic termination of their PMI based on the Original Value; and (3) paid PMI premiums after they qualified for automatic termination based on the Original Value. Excluded from the class are: (1) all borrowers who received refunds for all PMI premiums paid after the date on which they qualified for automatic termination based on the Original Value; (2) all persons who timely and validly request exclusion from the Settlement Class; (3) Seterus' officers, directors, and employees; (4) members of the immediate families of the officers and directors of Seterus; (5) Seterus' subsidiaries, parent companies, successors, predecessors, and any entity in which Seterus or its parent companies have a controlling interest; (6) Any Judge or Magistrate presiding over this matter; (7) any attorneys of record in this action; (8) any members of the immediate families of the foregoing persons or entities; and (9) the legal representatives, attorneys, heirs, successors, or assigns of the foregoing persons or entities.

    B.    <u>Relief to Plaintiff</u>. Defendant shall pay $7,400 to Plaintiff as damages for his Class claims, and as an incentive award for bringing the claims on behalf of the Class. Defendant has also terminated the PMI on Plaintiff's refinanced mortgage loan. This number was based on Plaintiff's actual damages (which exceeded $5,000), along with the extensive involvement Mr. Ciolino had in this Litigation, which included developing the initial legal theory and locating Class Counsel willing to file a case based on that theory. Plaintiff was deposed and took time off from work and incurred personal expenses in order to attend the deposition and the first of the two settlement conferences.

    C.    <u>Class Recovery</u>. Defendant will issue all Class Members, whose class notices are not returned as undeliverable by the post office, and whose PMI would have been cancelled earlier had Defendant used the original property value to calculate the new PMI automatic termination date, a check for 68% of the PMI premiums that were paid between the actual PMI termination date and newly calculated PMI termination date during the two-year HPA statute of limitations time period. Checks issued to eligible

Class Members will be void after 90 days ("void date"). Uncashed checks will revert back to the Defendant. The parties anticipate that uncashed checks will be minimal, if any, given the nature of the settlement and the ongoing relationship between the Class Members and Defendant.

D.      <u>Attorneys' Fees and Costs</u>. Counsel for Plaintiff and the Class shall petition the Court for approval of attorneys' fees and costs in the agreed upon amount of $117,000. Defendant shall pay counsel for Plaintiff and the Class that amount of attorneys' fees and costs awarded by the Court not to exceed $117,000. Class Counsel's current time and expenses already exceed $200,000, so that number represents a significant discount. Counsel will submit a fee petition with detailed time records prior to the final approval hearing.

E.      <u>Class Notice</u>. Within 30 days of entry of the Preliminary Approval Order, Defendant shall, through the Settlement Administrator, cause actual notice, in the form of Exhibit A to the attached Settlement Agreement, to be sent to the last known addresses of the Class Members, according to Seterus's records. The Settlement Administrator shall distribute the notice via any form of U.S. Mail providing address forwarding. Each notice shall be sent with a request for forwarding addresses. In the event that a notice is returned as undeliverable and a forwarding address is provided, the Settlement Administrator shall cause to be forwarded any such returned notice to the address provided within four days of receipt. For any notices that are returned without forwarding addresses or as undeliverable, the administrator will provide a skip tracing service to determine if a better address exists.

F.      <u>Class Members' Right to Opt Out</u>. All Class Members who properly file a timely written request for exclusion from the Class shall be excluded from the Class and shall have no rights pursuant to this Agreement. A request for exclusion must be in writing and state "I hereby wish to exclude myself from the settlement in in *Patrick Ciolino v. Seterus, Inc.,* Case No. 15-cv-9247. The Class Administrator shall forward copies of all requests for exclusion to Counsel for the Parties no later than seven days after the deadline for Class Members to submit such requests. The Settlement Agreement also provides requirements for class members who wish to object to the settlement.

H.      <u>Class Release</u>. The Agreement provides for a narrowly tailored class release, covering claims related to the termination of PMI after a loan modification.

6.      There are approximately 282 individuals in the Class, and it is estimated that the amount paid to the Class Members will be approximately $144,400. The amount paid to the Class Members will vary significantly depending on how much they paid in PMI premiums after the date on which Plaintiff alleges it should have been terminated. Some Class Members will receive as little as $15, while other will receive as much as $1,300. This is because the Class

4

Members' PMI premiums varied substantially – some were paying under $25 a month for PMI, while others were paying as much as $130 a month. In addition, some Class Members' PMI would have been cancelled 24 months ago had the original value been used, while others had reached the cancellation point only one month prior to Seterus's change in procedures.

7. The HPA has a two year statute of limitations, and arguably does not permit recovery of actual damages in a class action, instead providing for statutory damages of up to $500,000. The Settlement Class has been limited to the Seventh Circuit so that the damage cap will not come into play. Seterus was following Fannie Mae requirements when it used the modified value to calculate new automatic PMI termination dates. Seterus also did not retain the premiums itself, but instead sent them to various PMI companies, who have already refunded the most they are obligated to refund. Those limited refunds were already returned to the respective Class Members when Seterus changed it procedures. Seterus's position had the support of many in the industry, and numerous amicus briefs were filed in the Third Circuit *Fried* appeal supporting Seterus's method of making calculations. All of these facts would be considered by the Court in determining the amount of damages to award. Based on all of these issues, Class Counsel believe that the Agreement is fair and reasonable, and would be in the best interests of the Class Members, and should be approved by the Court.

8. If this Agreement is not approved by the Court or for any reason does not become effective, it shall be deemed null and void and shall be without prejudice to the rights of the parties hereto and shall not be used in any subsequent proceedings, in this or any other litigation, or in any manner whatsoever.

9. The settlement in this case complies with recent case law from the Seventh Circuit concerning class action awards, and is consistent with the principles set forth in *Pearson*

*v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014), *Redman v. RadioShack Corp.*, 768 F.3d 622, (7th Cir. 2014) and *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014). The award to the Class is distinct and separate from the attorneys' fees in this case. The HPA is a fee shifting statute and the fees being awarded to the Class Counsel would not come from a class fund but rather by payment directly from Defendant, pursuant to the fee shifting provision of the HPA as set out in Section 4907(a)(3) and (4) of the HPA. Thus, the size of the attorneys' fees award does not affect the award to the Class, unlike cases such as *Pearson*, *Redman* and *Eubank* where payment of the attorneys' fees affected the total payment to the class. In this case, the Class is receiving 68% of its actual damages, despite the fact that the relevant statute does not provide for payment of actual damages in a class case, and the state law claims, which could have been used to recover actual damages, have been dismissed on preemption grounds. The Class Members do not have to do anything to receive their money, as the settlement does not require claim forms, which should ensure that the vast majority of the Class will actually receive the settlement benefits. In addition, Seterus changed it practices in the middle of the Litigation, which provided relief to both the Settlement Class Members, and Seterus customers in other states. The Seventh Circuit has also since made it clear that fees can even exceed a class recovery, in a case where it ordered an award of $2.7 million in fees where the expected class recovery was $900,000. *In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Lit.*, 867 F.3d 791 (7th Cir. 2017). Just as in the *Barnes* case, Class Counsel in this case litigated the case vigorously in response to numerous arguments being made by Seterus on both the merits and class certification issues. Class Counsel has over $200,000 in time and expenses billed on this case, and the fees they are seeking in the settlement are therefore discounted by a greater percent than the class recovery.

10. Plaintiff further submits that the proposed class notice and notice distribution plan will give fair notice to the Class of the terms of the settlement, and the ways in which Class Members can participate (or not) in the settlement, thus satisfying the requirements of Fed.R.Civ.P.23, and of due process.

11. Schedule for Class Notice and Opt Outs and Objections: Plaintiff requests that the Court set the following schedule for the proposed Agreement:

    a. Seterus will provide data files containing the relevant information regarding the Settlement Class Members to the Settlement Administrator within 28 days from the date of Preliminary Approval.

    b. Within 20 days from the date that the Settlement Administrator receives the data files from Seterus, the Settlement Administrator shall run the addresses through the National Change of Address Database, and shall mail the Class Notice (the "Initial Notice") in sealed envelopes to all such Settlement Class Members.

1.     c. No later than 35 days after the first Initial Notice is mailed, the Settlement Administrator shall complete the re-mailing of Class Notices to those Settlement Class Members whose new addresses were identified as of that time through address traces (the "Notice Re-mailing Process"). The Settlement Administrator may, at its discretion, perform the Notice Re-mailing Process up to 14 days before the last day of the Opt-Out Period. The Settlement Administrator's continued efforts in connection with the Notice Re-mailing Process shall not affect or extend any Settlement Class Member's deadlines for objecting or opting out.

The Class Notice program (which is composed of both the Initial Notice and the Notice Re-mailing Process) shall be completed no later than 35 days after the first Initial Notice is mailed.

   d. The Settlement Class Members will be given 60 days from the date the Class Notice is initially mailed to opt-out or object to the settlement.

   e. Plaintiff shall file his motion for Final Approval of the Settlement, and his application for attorneys' fees, costs and expenses and for the Service Award for the Class Representative, no later than 21 days prior to the Final Approval Hearing.

   f. A Final Approval Hearing date shall be set that is at least 35 days after the deadline to opt out or object.

12. In the event that there is any conflict between any provision of this Motion and the Settlement Agreement between the parties, the parties intend for the Agreement to control, subject to Court approval.

WHEREFORE, Plaintiff respectfully requests that the Court enter an order in the form of Appendix B, which (a) preliminarily approves this Agreement; (b) schedules a hearing for final approval of this Agreement; (c) approves Exhibit A to the Agreement as notice to the Class to be directed to the last known address of the class members as shown in Seterus's records, (d) sets dates for Class Members to opt-out, object, or return a claim form and (e) schedules a hearing for final approval under FED. R. CIV. P. 23(c)(2).

              Respectfully submitted,

              For Plaintiff and the Class:

              */s/ Tara L. Goodwin*

              _____
              Tara L. Goodwin

Daniel A. Edelman
Tara L. Goodwin
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603-3593
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com
dedelman@edcombs.com
tgoodwin@edcombs.com